**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| OPEN COMMUNITIES ALLIANCE *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 17-2192 (BAH) |
| | Chief Judge Beryl A. Howell |
| BEN S. CARSON, SR., *Secretary of Housing and Urban Development, in his official capacity*, *et al.*, | |
| Defendants. | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

The plaintiffs, Open Communities Alliance and two individuals, prevailed in their suit to enjoin the defendants, the U.S. Department of Housing and Urban Development ("HUD") and HUD Secretary Ben Carson, *see Open Cmtys. All. v. Carson*, 286 F. Supp. 3d 148 (D.D.C. 2017), from delaying for two years, "without notice and comment or particularized evidentiary findings," *id.* at 152, the implementation of a final rule regarding the calculation of voucher subsidies.  Now, following the entry of judgment in the plaintiffs' favor, Stipulated Judgment and Order at 2, ECF No. 34, the plaintiffs seek a total award of $154,272.11 in attorneys' fees and costs under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A), *see* Pls.' Mot. Atty's' Fees & Costs ("Pls.' Mot."), at 1, ECF No. 35, for their 700.3 hours of attorney time and 103 hours of paralegal time, plus costs, litigating this matter, *id.* at 8.  The defendants do "not dispute that Plaintiffs are entitled to a fair and sizable award of attorneys' fees," and do not "contest their request for costs or [] the billing rate they employ."  Defs.' Opp'n Pls.' Mot. ("Defs.' Opp'n") at 3, ECF No. 36.  The defendants dispute solely "whether the amount of fees that Plaintiffs request is reasonable and warranted," *id.* at 3, and argue that the plaintiffs are

entitled only to two-thirds of their request amounting to $102,794.66, Defs.' Suppl. Defs.' Opp'n ("Defs.' Suppl.") at 2, ECF No. 39.  For the reasons set out below, the plaintiffs' motion is granted in full.

## I.      BACKGROUND

As noted, the plaintiffs seek fees for 700.3 hours of attorney time, billed at $198 per hour, and 103 hours of paralegal time, billed at $140 per hour.  Pls.' Mot. at 8–10.[1]  The plaintiffs derive their attorney time calculation from timesheets submitted by each of five co-counsel organizations, which add up to 778.1 attorney hours and 114.4 paralegal hours—a total that the plaintiffs then voluntarily cut by 10 percent, or 77.8 attorney hours and 11.4 paralegal hours, in order "to account for any concerns that may arise regarding 'block billing' practices and to ensure that their bottom line figure is reasonable."  *Id.* at 11–13.

In addition to the timesheets from each co-counsel organization, *see* Pls.' Mot., Exs. E–I, ECF Nos. 35-7–35-11, which include more than 430 individual entries, the plaintiffs submitted a detailed declaration that explains how the plaintiffs chose which hours to bill by "carefully review[ing] each time entry" and "exercis[ing] billing judgment to forego recovery of certain work so as to ensure that the fees requested are reasonable," Pls.' Mot., Attach. 2, Decl. of Sasha Samberg-Champion, Counsel, Relman, Dane & Colfax, PLLC (Mar. 15, 2018) ("Pls.' Decl.") ¶ 23, ECF No. 35-2.  Specifically, the plaintiffs excluded from their request "all time expended by all attorneys except the primary ones assigned to this case for each organization; [] attorney or

---

[1]      The plaintiffs correctly point out that "the $198 figure is conservative and arguably undervalues Plaintiffs' time," Pls.' Mot. at 9, particularly in light of the attorney's fee matrix prepared by the U.S. Attorney's Office for the District of Columbia "for use in cases in which a fee-shifting statute permits the prevailing party to recover 'reasonable' attorney's fees," USAO ATTORNEY'S FEES MATRIX, 2015–2018, *Explanatory Note* 1, *available at* https://www.justice.gov/usao-dc/file/796471/download.  Under this matrix, which does not apply to cases such as this one brought under 28 U.S.C. § 2412(d)(1)(A) "for judicial review of agency action," lawyers with less than two years of experience have a prevailing hourly rate in 2017–2018 of $302 per hour.  USAO ATTORNEY'S FEES MATRIX.

paralegal time spent on calls, at hearing preparation sessions, or at hearings for which that attorney or paralegal's presence was not required;" time spent "on witnesses that ultimately were not used;" time spent "responding to press inquiries;" and "substantial" amounts of time spent on "co-counsel and client agreements." *Id.* ¶ 24.  In addition to then cutting their overall hours by ten percent "to account for any concerns regarding block billing or inefficiencies," *id.* ¶ 27, the plaintiffs have not billed for any time worked after January 5, 2018, including time spent on the instant motion, *id.* ¶¶ 25–26.

## II.    LEGAL STANDARD

The EAJA provides, in pertinent part, that "a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action . . . including proceedings for judicial review of agency action," 28 U.S.C. § 2412(d)(1)(A), with certain exceptions not relevant here, such as cases where the government's position was "substantially justified" or "special circumstances make an award unjust."  As the Supreme Court has "often recognized, 'the specific purpose of the EAJA is to eliminate for the average person the financial disincentive to challenge unreasonable governmental actions.'" *Astrue v. Ratliff*, 560 U.S. 586, 599 (2010) (Sotomayor, J., concurring) (quoting *Commissioner* v. *Jean*, 496 U.S. 154, 163 (1990)); *see also Scarborough v. Principi*, 541 U.S. 401, 406 (2004) (authorizing attorney's fee awards against the Federal Government was intended "to eliminate the barriers that prohibit small businesses and individuals from securing vindication of their rights in civil actions and administrative proceedings brought by or against the Federal Government" (internal quotations and citation omitted)); *Sullivan v. Hudson*, 490 U.S. 877, 883 (1989) (the EAJA was designed to address the problem that "[f]or many citizens, the costs of

securing vindication of their rights and the inability to recover attorney fees preclude resort to the adjudicatory process" (internal quotations and citation omitted)).

The role of the district court is "to determine what fee is 'reasonable.'" *Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*, 857 F.3d 907, 910 (D.C. Cir. 2017) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)); *see also id.* at 911 (fee awards under EAJA are reviewed for abuse of discretion).  In making this determination, the district court reviews "[t]he number of hours reasonably expended on behalf of the prevailing party . . . by evaluating the total number of hours expended and disallowing unproductive time or time spent on unsuccessful claims" and excluding from the calculation "hours that are 'excessive, redundant, or otherwise unnecessary.'" *Murray v. Weinberger*, 741 F.2d 1423, 1427 (D.C. Cir. 1984) (quoting *Hensley*, 461 U.S. at 434); *Wash. All. of Tech. Workers*, 857 F.3d at 910.  Fee applications must "include contemporaneous time records of hours worked and rates claimed, plus a detailed description of the subject matter of the work with supporting documents, if any." *In re Donovan*, 877 F.2d 982, 994 (D.C. Cir. 1989).

## III.   DISCUSSION

The defendants contend that the plaintiffs' requested fee award should be reduced by one-third because: (1) the plaintiffs' use of block billing, including the improper billing of time for administrative or clerical work, is *per se* unreasonable, Defs.' Opp'n at 10–15; and (2) the plaintiffs' timesheet entries are vague and/or duplicative, *id.* at 4–10.  Neither contention is persuasive.

### A.  The Plaintiffs' Did Not Submit Improper Bills

The defendants argue that the plaintiffs' request "should be reduced as a result of the significant amount of block billing entries," Defs.' Opp'n at 10, citing 148 such entries, Defs.'

Suppl., Exs. A–B, D, ECF Nos. 39-1, 39-2, 39-4, which the defendants posit prevent the Court from determining the reasonableness of the time spent on various tasks.[2]  Although block billing, where "time records lump together multiple tasks," can "mak[e] it impossible to evaluate their reasonableness," *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 971 (D.C. Cir. 2004), contrary to the defendants' view, such billing is not *per se* impermissible.  Instead, a fee petition "need not present the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney."  *Shaw v. Dist. of Columbia*, 210 F. Supp. 3d 46, 52 (D.D.C. 2016) (quoting *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982)).

Block billing is even less concerning where the plaintiffs have prevailed on all of their claims, *see DL v. Dist. of Columbia*, 256 F.R.D. 239, 245 (D.D.C. 2009), *rev'd on other grounds*, 713 F.3d 120, 129 (D.C. Cir. 2013), or where the block billing does not "interfere[] with the [c]ourt's ability to evaluate the reasonableness of billed hours spent on specific motions or filings," *Hernandez v. Chipotle Mexican Grill, Inc.*, 257 F. Supp. 3d 100, 112 (D.D.C. 2017) (citing *Role Models*, 353 F.3d at 970).  Ultimately, the test of the plaintiffs' timesheets is whether they are "of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended."  *Role Models*, 353 F.3d at 970 (quoting *In re Olson*, 884 F.2d 1415, 1428 (D.C. Cir. 1989)).

---

[2]     The defendants supplemented their opposition brief with annotated timesheets showing which entries the defendants viewed as block billed, Defs.' Suppl. at 1, and "impermissible," Defs.' Opp'n at 1.  Rather than seek reduction of the fee award for the total amount allegedly block billed, the defendants propose reducing by 40 percent the purportedly block billed entries.  Defs.' Suppl. at 1.  This 40 percent reduction number appears to have been conjured by defendants out of thin air, with no citation to any case law or even any proffered rationale.  The defendants' suggested 50 percent reduction for "entries that were both block billed and contained some noncompensable activities," *id.*, and proposed 30 percent reduction "for general excessiveness, duplication, and vagueness," *id.*, appear similarly made-up.

The plaintiffs' timesheets meet that standard.  The defendants cite in their briefing three examples of block billing, Defs.' Opp'n at 11–12, none of which poses any difficulty in evaluating reasonableness.  Indeed, many of the 148 entries identified by the defendants as block billed simply provide significant detail about related tasks and the defendants "appear[] to conflate entries in which plaintiff[s'] counsel has provided greater detail with impermissible block billing."  *Hernandez*, 257 F. Supp. 3d at 112 (finding that "most of the entries listed by the defendant are simply not block billed").

Specifically, the defendants criticize as examples of block billing (1) the 6.1 hours billed on November 2, 2017, for time spent "edit[ing]" different components of the plaintiffs' preliminary injunction motion, Defs.' Opp'n at 11; (2) the 7.2 hours billed on November 6, 2017, for editing and "compiling [the] final version" of the preliminary injunction brief, and "confer[ring]" with defendants' counsel about the briefing schedule, *id.* at 12; and (3) the 13.7 hours billed on December 11, 2017, for time spent finalizing and then filing the plaintiffs' reply brief, *id.*

Yet, these entries describe complementary tasks that would seamlessly occur and for which disaggregation would be difficult.  Notably, however, the defendants do not contend that, irrespective of the granular breakdown, the 6.1 hours spent editing a preliminary injunction motion to be filed in federal court in a complex challenge to federal agency action is in any way unreasonable, or that any of the other two examples evidence an excessive number of hours for the tasks described.

Certainly, none of the entries challenged by the defendants "lump" together work on unrelated matters, *Role Models*, 353 F.3d at 971, in a manner that would be impermissible, and all relate to the plaintiffs' successful litigation.  Instead, the challenged entries provide details

about subsets of tasks, such as editing, where disaggregation of the entries would not be useful to the Court's reasonableness evaluation.  *See Hernandez*, 257 F. Supp. 3d at 112 ("Explaining the related tasks that went into drafting the closing statement, or in scheduling a conference call, or in drafting and researching a surreply is not block billing, but is detailing the specific tasks performed related to a larger overarching task.").  As the plaintiffs point out, the defendants' proposed 40-percent reduction for all entries identified as block-billed, Defs.' Suppl. at 1, "would penalize Plaintiffs' counsel for providing too *much* detail about discrete but related tasks," given that each of the three examples of alleged block billing cited by the defendants' brief "could reasonably have been described as 'Editing and preparing preliminary injunction and supporting documents,'" Pls.' Reply Supp. Pls.' Mot. ("Pls.' Reply") at 6, ECF No. 40.

In short, the plaintiffs' thorough timesheet entries are "of sufficient detail and probative value," *Role Models*, 353 F.3d at 970 (quoting *In re Olson*, 884 F.2d at 1428), to show that the time billed is reasonable.

In addition to accusing the plaintiffs of impermissible block billing, the defendants object to certain "entries that are non-compensable as a matter of law."  Defs.' Opp'n at 12.  First, the "numerous hours relating to the press" that the defendants claim are improperly billed, *id.* at 13, were not actually included in the plaintiffs' final timesheets as filed with the Court, *see* Pls.' Reply at 7 n.1; *see also* Pls.' Decl. ¶ 24 (noting the plaintiffs did not bill for "time associated with responding to press inquiries").

Second, the defendants complain that the plaintiffs "attempt to bill attorneys' hours for tasks that could have been performed by a paralegal, and paralegals for time spent on clerical work."  Defs.' Opp'n at 13.  The sole example of the former, however, quotes only part of an entry for December 11, 2017, describing the final editing and proofing of the plaintiffs' reply

brief—including "directing and reviewing paralegal work product," Pls.' Reply at 7—which is a reasonable task for an attorney.  The defendants' seven cited examples of entries "billing for clerical work," Defs.' Opp'n at 13–14, are likewise unconvincing.  Although the defendants are correct that "purely clerical or secretarial tasks should not be billed at a paralegal rate," *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989), such tasks have been defined as including "'delivering' or 'picking up' various documents as well as photocopying," *In re Meese*, 907 F.2d 1192, 1203 (D.C. Cir. 1990).  The defendants cite no authority for their claim that "organiz[ing]," "draft[ing]," or "fil[ing]" documents, or "review[ing]" the Court's standing order or local rules, Defs.' Opp'n at 13–14, constitute "purely clerical" rather than paralegal tasks, and so this objection falls flat.

Next, the defendants object to the plaintiffs' billing "relating to administrative matters such as client recruitment, 'retainer agreements,' 'recruiting co-counsel,' and 'drafting co-counsel agreements.'"  Defs.' Opp'n at 14 (citing *Role Models*, 353 F.3d at 973 ("The government should not have to pay for administrative matters relating to the formal relationship between Role Models and its attorneys.")).  The plaintiff in *Role Models*, however, had a single attorney for its suit over the "disposi[tion] of excess military property," 353 F.3d at 964; *see also Role Models America, Inc. v. White*, 193 F. Supp. 2d 76, 77 (D.D.C. 2002), whereas the instant plaintiffs were represented by "five co-counsel organizations," Pls.' Mot. at 11, in a far more complex suit challenging agency action relating to "200 local Public Housing Authorities . . . in 24 metropolitan areas," *Open Cmtys.*, 286 F. Supp. 3d at 152.  Given the complexity of this case, and the fact that coordination between counsel for different civil rights organizations presents challenges beyond simply establishing "the formal relationship between" a single plaintiff and its attorneys, *Role Models*, 353 F.3d at 973, the instant plaintiffs' billing is not barred by any

binding precedent, nor is it unreasonable, especially given that the plaintiffs already excised from their request "substantial time associated with the formation of co-counsel and client agreements," Pls.' Decl. ¶ 24.

Finally, the defendants' objection to billing entries for the time between when the preliminary injunction was granted on December 23, 2018, and when the stipulated judgment was entered on February 16, 2018, Defs.' Opp'n at 14–15, is ill-founded.  The defendants rely on a single case, *Doe v. Rumsfeld*, 501 F. Supp. 2d 186, 193 (D.D.C. 2007), but this case is inapposite.  In *Doe*, the court excluded a reimbursement request for "work that occurred after [its] final judgment," *id.* at 193, which is very clearly not the same as work undertaken between a preliminary injunction and a final stipulated judgment.[3]

In sum, the plaintiffs did not, as the defendants claim, improperly use block billing, nor did they bill for time that is non-compensable as a matter of law.

**B.  Entries are Not Unduly Excessive, Duplicative, or Vague**

The defendants argue separately that the plaintiffs' timesheet entries are marked by "general excessiveness, duplication, and vagueness."  Defs.' Suppl. at 1; Defs.' Opp'n at 4–10. The Court disagrees.

The defendants first point to the plaintiffs' litigation team of "eleven attorneys and five paralegals" to argue this team was "unnecessary" and "its natural result is excessive billing." Defs.' Opp'n at 7.  Although courts have reduced fee awards due to overstaffing, *see, e.g.*, *Am.*

---

[3]     Although the plaintiffs chose not to seek recovery for time spent on this case after January 5, 2018, "on matters within the scope of this litigation, including monitoring Defendants' implementation and compliance with the preliminary injunction; reviewing comments submitted to HUD regarding the suspension of the Small Area FMR Rule; and negotiating the final judgment that this Court entered," Pls.' Mot. at 11, such time, as well as time spent on the instant motion to collect a fee award, could have been recoverable, *see Jean*, 496 U.S. at 162–66.  As the plaintiffs note, the litigation did not end when the preliminary injunction was granted, and "[p]reparation for the next step of litigation in a pending case is a necessary task of responsible lawyers," particularly where "HUD did not announce contemporaneously that it would comply with this Court's order, how it would do so, whether it would appeal, or even whether it would file a subsequent motion to dismiss."  Pls.' Reply at 9.

*Immigration Council v. U.S. Dep't of Homeland Sec.*, 82 F. Supp. 3d 396, 411–12 (D.D.C. 2015), the notion that multiple attorneys necessarily leads to excessive billing has been rejected by the D.C. Circuit.  *See, e.g.*, *In re Cisneros*, 454 F.3d 342, 349 (D.C. Cir. 2006) (declining to reduce attorneys' fees where the non-moving party has objected to "two or more attorneys billing for the same task"); *In re Madison Guar. Sav. & Loan (Marceca Fee Application)*, 366 F.3d 922, 928 (D.C. Cir. 2004) (reducing fee award on grounds other than that "certain tasks were performed by multiple attorneys").  The number of attorneys working on a case, by itself, simply "may not be a reason to eliminate hours," *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. EPA*, 169 F.3d 755, 761 (D.C. Cir. 1999), since "[t]he issue is not whether [a party] used too many attorneys, but whether the work performed was unnecessary," *Donnell v. United States*, 682 F.2d 240, 250 n.27 (D.C. Cir. 1982).  Indeed, the D.C. Circuit has held that attorneys' fees may be awarded for time spent by multiple attorneys conferring about a matter because such communication can "ensure that a case is managed in an effective as well as efficient manner."  *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1337 (D.C. Cir. 1982); *see also Petties v. Dist. of Columbia*, Civ. No. 95-148, 2009 WL 8663462, at *8 (D.D.C. Oct. 20, 2009) (approving reasonableness of billing where "plaintiffs' attorneys have divided among themselves the many complex matters involved in this case, [so] they must meet occasionally or talk on the phone or exchange e-mails to discuss these issues and to strategize").  In fact, to guard against excessive billing by multiple attorneys, the plaintiffs took the responsible step of excluding from their fee request "all time expended by all attorneys except the primary ones assigned to this case for each organization" and "attorney or paralegal time spent on calls, at hearing preparation sessions, or at hearings for which that attorney or paralegal's presence was not required."  Pls.' Decl. ¶ 24.

To bolster their claim of excessive billing, the defendants also cite "the nature of this case," which the defendants describe as "present[ing] no novel issue of law, no administrative record, no disputes of fact, involv[ing] no discovery and present[ing] a straightforward challenge to HUD's alleged failure to comply with governing statutes and its own regulation." Defs.' Opp'n at 7. This argument is wholly unpersuasive, because the fact that this case was largely resolved at the preliminary injunction stage, and without a multiplicity of filings, does not mean that it was a simple matter. The plaintiffs note that they "did the work of collecting and analyzing what would have been the [administrative] record," and filed "a lengthy, complicated complaint and papers in support of the motion for a preliminary injunction" which required "expert analysis of the lengthy Interim Report, fact-gathering," and other research. Pls.' Reply at 2. Although courts "must exclude from fee awards 'hours that are excessive, redundant, or otherwise unnecessary,'" *Precision Concrete v. NLRB*, 362 F.3d 847, 853 (D.C. Cir. 2004) (quoting *Hensley*, 461 U.S. at 443), the plaintiffs' billing 700.3 attorney hours is "not facially unreasonable," *Hernandez*, 257 F. Supp. 3d at 107, in the context of the instant case.

The defendants' general complaint that the numbers of hours spent on different phases of this litigation was facially unreasonable, is also unpersuasive. *See Blackman v. Dist. of Columbia*, 56 F. Supp. 3d 19, 28 (D.D.C. 2014) ("The Court will not reduce the overall award simply based on the [] general objection that the hours billed are excessive."). Specifically, the defendants object to the 293.4 attorney hours spent on the complaint, 257.6 attorney hours spent "drafting the preliminary injunction," 107.9 hours spent on the reply, and 29.3 hours spent preparing for oral argument. Defs.' Opp'n at 8–9. In light of similar billings that other courts have found reasonable, however, along with the complexity of this case, these objections are entirely misplaced. *See, e.g.*, *Bennett v. Castro*, 74 F. Supp. 3d 382, 403 (D.D.C. 2014) (finding

11

reasonable 576 hours spent on "preliminary work"); *Hernandez*, 257 F. Supp. 3d at 107–08 (finding reasonable 255.8 hours spent on opposition to motion for summary judgment); *Am. Petroleum Inst. v. EPA*, 72 F.3d 907, 917 (D.C. Cir. 1996) (finding reasonable 80 hours of preparation for oral argument).

The defendants also specifically object to "forty-four entries totaling 51.7 hours for calls that do not state the subject matter of the call," as well as other entries that do not "include a description of the subject matter."  Defs.' Opp'n at 6.  Although the entries the defendants cite, *id.*, are not themselves particularly helpful, they do appear to align with more descriptive entries by other counsel for calls on those days.  For instance, the August 30, 2017, entry for "litigation team call" for one of the plaintiffs' attorneys, Pls.' Mot., Ex. H, Timesheets for Phillip Tegeler and Megan Haberle, ECF No. 35-10 at 4, matches the August 30, 2017, entry including "confer w/ case team re: witness interview, drafting progress" for another of the attorneys, Pls.' Mot. Ex. E, Timesheets for Sasha Samberg-Champion, ECF No. 35-7 at 1.  The Court also relies on the representation by the plaintiffs' lead counsel that he "carefully reviewed each time entry and description for each attorney and staff member for whom fees are sought and ha[s] exercised billing judgment to forego recovery of certain work so as to ensure that the fees requested are reasonable," including with respect to "participants on conference calls."  Pls.' Decl. ¶¶ 23–24. The plaintiffs' declaration, and the context provided by reading their five timesheets together, effectively counter the defendants' vagueness complaints.

Finally, the defendants' concerns about excessive or duplicative billing are fully addressed by the "exercise of billing judgment" noted in the plaintiffs' declaration, Pls.' Decl. ¶ 24, and by the plaintiffs' ten percent cut from their initial total of 778.1 attorney hours to 700.3 attorney hours in their fees request, *see Ashraf-Hassan v. Embassy of Fr. in the U.S.*, 189 F.

Supp. 3d 48, 58 (D.D.C. 2016) (finding the hours billed reasonable where "in an effort to reduce the fee amount, Plaintiff's counsel regularly no charged duplicative or unnecessary time, reviewing the over five years of billing entries to delete or no charge additional entries with the benefit of hind-sight" (alterations adopted) (internal quotation marks omitted)).

In sum, the plaintiffs' timesheets and declaration—taking into consideration the complexity and speed of this case, and bearing in mind that, in the pursuit of "rough justice" rather than "auditing perfection," "trial courts need not, and indeed should not, become green-eyeshade accountants," *Fox v. Vice*, 563 U.S. 826, 838 (2011)—demonstrate that the plaintiffs' fee request is reasonable, and the defendants' protestations to the contrary are unpersuasive.

## IV.    CONCLUSION

Accordingly, for the foregoing reasons, upon consideration of the plaintiffs Open Communities Alliance, Crystal Carter, and Tiara Moore's Motion for Attorneys' Fees and Costs, ECF No. 35, the related legal memoranda in support of and opposition to this motion, the exhibits and affidavits attached thereto, and the entire record herein, it is hereby

**ORDERED** that the plaintiffs' Motion for Attorneys' Fees and Costs is GRANTED; and it is further

**ORDERED** that the defendant pay the plaintiffs' attorneys' fees in the amount of $154,272.11, by August 14, 2018, unless the parties reach an alternative mutually agreeable date.

Date: June 15, 2018

_____
BERYL A. HOWELL
Chief Judge